IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELAINE BRUNSON,                         *

    Plaintiff,                      *

v.                                      *        Civil Action No. GLR-20-3677

JOHNS HOPKINS COMMUNITY                 *
PHYSICIANS, INC.,
                                        *
    Defendant.

                  ***

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendant Johns Hopkins Community Physicians, Inc.'s ("JHCP") Motion for Summary Judgment (ECF No. 57). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant the Motion in part and deny the Motion in part.

## I.    BACKGROUND

### A.    <u>Brunson's Employment with JHCP</u>

Plaintiff Elaine Brunson, a self-identified Black woman, began working for Defendant JHCP as a registered medical assistant on March 4, 2019. (Decl. Elaine Brunson ["Brunson Decl."] ¶¶ 1–3, ECF No. 62-1). Brunson's tenure with JHCP was not a harmonious one and the parties disagree about many of the details. The parties do not dispute, however, that on January 4, 2020, Brunson filed two complaints with the Equal Employment Opportunity Commission ("EEOC") alleging that she was subjected to race-based discrimination and harassment by JHCP. (<u>Id.</u> ¶ 12). Nor do they dispute that ten days

later, JHCP placed Brunson on a Performance Improvement Plan ("PIP"), and on February 21, 2020, JHCP terminated her employment. (Id.  ¶¶ 13, 31). Here, the commonalities in the parties' accounts end.

According to Brunson, she began to experience harassment based on her race soon after she started working for JHCP. (Compl. ¶ 5, ECF No. 1).[1] Brunson contends that her manager Angela Pilarchik, a white woman, often favored Brunson's other, non-Black coworkers over her. (Id. ¶¶ 10–11). On one occasion, Brunson contends that she approached a Nurse Practitioner named Carolyn Le to ask a question. Instead of offering assistance, Le rudely pointed at her and yelled for her to "Go, go, go!" (Brunson Decl. ¶ 11(e)). When Brunson complained about Le's behavior to Pilarchik, Pilarchik turned the incident back on Brunson and claimed that she was the one who yelled. (Id.). Brunson contends that this was typical behavior for Pilarchik and that she would often blame Brunson during conflicts. (Compl. ¶ 10; see Tr. Brunson Dep. ["Brunson Dep."] at 175:21–77:16, 212:12–20, ECF No. 52; Id. ¶ 11(c)). Brunson also alleges that Pilarchik failed to give her floater coverage during shifts, and as a result she would have to take her lunch breaks late. (Compl. ¶¶ 23–24; see also Brunson Dep. at 105:7–06:19–21, 239:17–40:1; Brunson Decl. ¶ 11(a)). Finally, Brunson contends that Pilarchik texted her incessantly when she was out sick, even after she asked Pilarchik to stop. (Compl. ¶ 32).

JHCP, on the other hand, tells a  different story. JHCP contends that Brunson was a chronically poor performer and did not fit in well with her team. (See July 29, 2019,

---

[1] The record in this case is dense and the parties have produced over 1,300 pages of documents to aid the Court in its decision. (See generally ECF Nos. 43–56).

Performance Evaluation at 11, ECF No. 45-8). JHCP notes that Brunson received poor marks on her July 29, 2019, performance evaluation and was given an overall rating of 2.54 out of 5, or "needs improvement." (Id.). JHCP contends that Pilarchik had "serious concerns" about Brunson and that she was "quite convinced that [Brunson] [was] not a good fit" for their practice. (Sept. 10, 2019 Emails at 2, ECF No. 45-12). Pilarchik began to contemplate placing Brunson on a PIP in September 2019. (Id.).

According to JHCP, Brunson did not get along well with her coworkers. Pilarchik testified that during a July 15, 2019, staff meeting, Brunson called another employee, Zoe Ortiz, a liar. (Dep. Angela Pilarchik ["Pilarchik Dep."] at 156:22–60:3, ECF No. 52-1). The conflict escalated and Pilarchik testified that Brunson grew "extremely defensive and was yelling." (Id. at 159:12–16). Pilarchik testified that Brunson was speaking over others and would not let them finish talking. (Id. at 159:20–60:3). Pilarchik further testified that Brunson was difficult to manage after she was placed on the PIP and routinely refused to attend required meetings regarding her performance. (Id. at 51:20–52:2). Finally, Pilarchik and another employee, Dr. Dy, offered testimony that Brunson made mistakes while administering vaccines and performing electrocardiograms, which they contend contributed to JHCP's decision to terminate Brunson's employment in February 2020. (Pilarchik Dep. at 165:13–20; Dep. Dr. Dy ["Dy Dep."] at 14:11–13, 50:3–51:1, ECF No. 52-2).

The Court will supply additional facts as necessary below.

3

**B.**    **Procedural History**

On December 18, 2020, Brunson filed this lawsuit against JHCP. (ECF No. 1). Brunson's two-count Complaint alleges: discrimination/hostile work environment under Title VII (Count I); and retaliation under Title VII (Count II). (Compl. ¶¶ 49–61). Brunson seeks compensatory damages, punitive damages, and fees. (Id. at 9–10).

On December 9, 2021, following discovery, JHCP filed the instant Motion for Summary Judgment under seal (ECF No. 57). On January 7, 2022, Brunson filed her Opposition (ECF No. 62). JHCP filed its Reply on January 21, 2022 (ECF No. 63).[2]

## II.    DISCUSSION

**A.**    **Standard of Review**

**1.**    **Summary Judgment**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

---

[2] JHCP inadvertently filed an earlier version of its Motion for Summary Judgment and exhibits on December 3, 2021, but it withdrew them shortly after. (ECF Nos. 41, 43–56). JHCP filed the mistaken Motion with a separate, joint Motion to Seal (ECF No. 42), which the Court will grant in an abundance of caution to protect Brunson's personal information.

stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3 d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof,

"there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Anderson, 477 U.S. at 247).

### 2.    Title VII

Both of Brunson's claims arise from Title VII. Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." Perkins v. Int'l Paper Co., 936 F.3d 196, 205 (4th Cir. 2019) (quoting 42 U.S.C. § 2000e-2). Courts have referred to § 2000e-2 as the "anti-discrimination" provision of Title VII. Id. Title VII further forbids discrimination based on an employee's "opposition to conduct made unlawful by Title VII or participation in any Title VII investigation, proceeding or hearing." Id. at 205–06 (citing 42 U.S.C. § 2000e-3). Section 2000e-3 is referred to as the "anti-retaliation" provision. Id. Brunson's claim for hostile work environment falls under § 2000e-2, whereas her claim for retaliation falls under § 2000e-3. See id. at 206.

A plaintiff has two methods of proof to avoid summary judgment with regard to a Title VII discrimination or retaliation claim: the mixed-motive framework or the pretext framework using the McDonnell Douglas burden-shifting analysis. Perkins, 936 F.3d at 204 n.4. Brunson does not address the methods but appears to rely on the McDonnell Douglas factors. (See Pl.'s Opp'n Def.'s Mot. Summ. J. ["Opp'n] at 8–10, ECF No. 62) (making out a prima facie case); see also Diamond v. Colonial Life & Acc. Ins., 416 F.3d 310, 318 (4th Cir. 2005) (describing the "prima facie case" as "a mechanism peculiar to

the pretext framework"). As Brunson has apparently opted for the pretext framework, which is within her discretion, the Court will only address the McDonnell Douglas factors in its analysis. See Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015) (citations omitted) ("It is left to the plaintiff's discretion whether to proceed by direct and indirect evidence or by mean[s] of the McDonnell Douglas burden-shifting framework.").

**B.  Analysis**

**1.  Hostile Work Environment on the Basis of Race**

Brunson raises a claim for race-based hostile work environment under the anti-discrimination provision of Title VII, 42 U.S.C. § 2000e-2. A hostile work environment is one that is "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" Lambert v. Savaseniorcare Admin. Servs., LLC, No. DLB-20-2768, 2022 WL 3027993, at *13 (D.Md. July 29, 2022) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). In order to establish a prima facie claim for hostile work environment based on her race, Brunson must show that she experienced harassment that was (1) unwelcome, (2) based on her race, (3) "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere," and (4) "there is some basis for imposing liability on [her] employer." Perkins, 936 F.3d at 207–08; accord Sims v. Univ. of Md. Med. Sys. Corp., No. CCB-19-295, 2022 WL 2275891, at *20 (D.Md. June 23, 2022).

JHCP argues, among other things, that Brunson has failed to demonstrate that the alleged harassment was sufficiently severe or pervasive. (Def.'s Mot. Summ. J. ["Mot."]

at 15–16, ECF No. 57).[3] "The severe or pervasive element has both a subjective and objective component." <u>Perkins</u>, 936 F.3d at 208. Accordingly, Brunson must demonstrate that she "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." <u>Id.</u> (quoting <u>E.E.O.C. v. Cent. Wholesalers, Inc.</u>, 573 F.3d 167, 175 (4th Cir. 2009)). JHCP does not raise any argument that Brunson herself did not perceive her environment to abusive or hostile. (<u>See generally</u> Mot.). Accordingly, the Court will focus on the objective component of the test.

"Th[e] objective inquiry 'is not, and by its nature cannot be, a mathematically precise test.'" <u>E.E.O.C. v. Sunbelt Rentals, Inc.</u>, 521 F.3d 306, 315 (4th Cir. 2008) (quoting <u>Harris</u>, 510 U.S. at 22). Instead, the Court "must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Perkins</u>, 936 F.3d at 208 (quoting <u>Sunbelt Rentals</u>, 521 F.3d at 315). No one factor is dispositive because "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." <u>Sunbelt Rentals</u>, 521 F.3d at 315 (quoting <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 81–82 (1998)).

---

[3] The Court notes that JHCP argues additionally that Brunson cannot show that any of the alleged harassment was race-based. As Brunson fails to establish that the harassment was severe or pervasive, a necessary element of the claim, the Court need not reach whether it was race-based.

Title VII does not create a "general civility code for the American workplace." Id. at 315 (quoting Oncale, 523 U.S. at 80). Thus, an actionable hostile work environment claim must involve "conduct . . . [so] extreme [as] to amount to a change in the terms and conditions of employment." Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. (quoting Faragher, 524 U.S. at 788); accord Perkins, 936 F.3d at 208. Accordingly, "rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor are not actionable under Title VII." Sunbelt Rentals, 521 U.S. at 315–16 (citations omitted). Thus, the Court must determine whether a reasonable jury could find Brunson's employment atmosphere "to be so out of the ordinary as to meet the severe or pervasive criterion." See id. at 316.

Here, even when viewed in the light most favorable to Brunson, the evidence is insufficient to meet the high bar required to establish the severe or pervasive prong. Brunson does not allege that any JHCP employee made racially offensive statements to her. (See Opp'n at 24–25). Rather, she identifies ways in which she contends her white coworkers were given preferential treatment over her. First, Brunson argues that Pilarchik favored two non-Black employees, Jennifer Christensen and Catherine Davidson, in providing "floater" coverage. (See Brunson Dep. at 239:17–40:1; see also Brunson Decl. ¶ 11(a) ("Pilarchik favored White employees in providing floaters.")). In support, Brunson cites her own deposition testimony where she asserts that Sharese Gray, another JHCP

employee, "witnessed Jennifer Christensen and Catherine Davidson being favored by Angela Pilarchik in reference to getting . . . floaters when we need it." (Brunson Dep. at 239:17–40:1). But Brunson does not point to any evidence that might show how Pilarchik favored those employees. She does not, for instance, identify any dates on which Pilarchik favored Christenson or Davidson, offer any purported schedules that might show this favoritism, or even cite testimony by Gray to support these allegations. The Court is left only with Brunson's conclusory testimony and her unadorned assertion in her affidavit that "Pilarchik favored White employees in providing floaters." (Brunson Decl. ¶ 11(a)). The Court notes that "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" See Angelini v. Balt. Police Dep't, 464 F.Supp.3d 756, 776 (D.Md. 2020) (quoting CTB, Inc. v. Hog Slat, Inc., 954 F.3d 647, 658–59 (4th Cir. 2020)).

The remainder of Brunson's allegations, although unpleasant, do not amount to a hostile work environment. First, Brunson contends that Pilarchik failed to address Brunson's complaints about white staff members and would instead accuse Brunson of yelling and being loud. (Opp'n at 24; Brunson Dep. at 175:21–77:16). Specifically, Brunson testified that, at some point, she observed Christensen "yell[] . . . [a patient's] name all through the clinic." (Brunson Dep. at 212:12–15). Brunson reported this behavior to Pilarchik but testified that "[n]othing happened to [Christensen]" as a result. (Id. at 212:17–20). In her affidavit, Brunson similarly suggests that "Pilarchik failed to address" her complaints about her white coworker. (Brunson Decl. ¶11(c)). Again, Brunson does not identify her specific complaints to Pilarchik, nor does she explain how Pilarchik failed to adequately respond to them. Finally, Brunson contends that Pilarchik failed to ensure

that Brunson consistently had coverage during her lunch breaks. She testified that Davidson and Christensen would often "disappear off the floor" when she needed help, causing her to have lunch late, at times after 2:00 p.m. (Brunson Dep. at 105:7–106:7, 106:19–21).

Under the totality of the circumstances, Brunson has not identified the type of conduct that is severe or pervasive enough to create an objectively hostile workplace. Even taken together and in the light most favorable to Brunson, the evidence does not amount to much more than inconsiderate treatment by her fellow employees and perhaps indifference on the part of Pilarchik. None of the conduct appears to be physically threatening or humiliating. Further, Brunson has not produced evidence that suggests that these conflicts were frequent. Indeed, Brunson does not offer details that could help the Court determine the frequency of the conduct, like dates of these incidents or other logs or schedules that might show Pilarchik's alleged favoritism. Nor has Brunson shown how any of the alleged conduct might have interfered with her capacity to perform her work. At best, Brunson has shown that she was involved in interpersonal conflicts with her coworkers and that Pilarchik sided with those coworkers over her. "[I]ncidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." Perkins, 936 F.3d at 208 (quoting Sunbelt Rentals, Inc., 521 F.3d at 315). Brunson's often vague allegations are insufficient to clear the high bar to satisfy the objective severe or pervasive test, a necessary element of her prima facie case. See Sunbelt Rentals, 521 F.3d at 315–16 (citing cases in which complainant failed to satisfy objective severe or pervasive test); see also Perkins, 936 F.3d at 207–08. Accordingly, the Court will grant JHCP's Motion as to Count I.

### 2.    Retaliation

Next, JHCP seeks summary judgment on Brunson's Title VII retaliation claim, arguing that Brunson has failed to make a prima facie case and alternatively, that she has failed to establish pretext. Accordingly, the Court will first consider whether Brunson has met the standard for a prima facie case under the McDonell Douglas framework and then will analyze whether she has created a triable issue as to pretext.

### a.    Prima Facie Case

As explained above, Title VII prohibits an employee from retaliating against an employee for complaining about prior discrimination. Foster, 787 F.3d at 249. Brunson does not have direct evidence of retaliation and instead has opted to prove her retaliation claims using the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 792 (1973). To establish a prima facie case for retaliation, a plaintiff must show that "(1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." Rodgers v. Eagle All., -- F.Supp.3d ---, 2022 WL 541162, at *34 (D.Md. 2022) (quoting Okoli v. City of Balt., 648 F.3d 216, 223 (4th Cir. 2011)).

JHCP concedes in its Motion that Brunson has met the first and second prongs required for a prima facie case because she filed an internal complaint of discrimination on January 4, 2020, was placed on a PIP on January 13, 2020, and was terminated on February 21, 2020. (See Mot. at 18). JHCP argues, however, that Brunson has not met the third

prong, causation, and thus the Court should grant judgment in its favor. At bottom, the Court finds that Brunson has adduced sufficient evidence to establish causation.

In order to establish the causation element of a prima facie case of retaliation, the plaintiff must show that her employer "took the adverse action <u>because</u> of the protected activity." <u>Roberts v. Glenn Indus. Group, Inc.</u>, 998 F.3d 111, 123 (4th Cir. 2021) (quoting <u>Bryant v. Aiken Reg'l Med. Ctrs., Inc.</u>, 333 F.3d 536, 543 (4th Cir. 2003)). "A plaintiff may attempt to demonstrate that a protected activity caused an adverse action through two routes." <u>Id.</u> (quoting <u>Johnson v. United Parcel Serv., Inc.</u>, 839 F.App'x 781, 783–84 (4th Cir. 2021)). First, an employee may establish facts that "suggest[] that the adverse action occurred because of the protected activity." <u>Id.</u> (quoting <u>Johnson</u>, 839 F.App'x at 783–84). Second, a plaintiff may show that "the adverse act bears sufficient temporal proximity to the protected activity." <u>Id.</u> (quoting <u>Johnson</u>, 839 F.App'x at 783–84). A plaintiff may establish causation through relevant facts on their own or when considered along with evidence of temporal proximity. <u>Id.</u> The Fourth Circuit has held that "establishing a 'causal relationship' at the prima facie stage is not an onerous burden." <u>Roberts</u>, 998 F.3d at 127 (quoting <u>Strothers v. City of Laurel, Md.</u>, 895 F.3d 317, 335 (4th Cir. 2018)). Indeed, temporal proximity alone may be sufficient evidence of causality where the adverse action is "very close" to the protected activity. <u>Id.</u> (quoting <u>Clark Cnty. School Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001)); <u>see also</u> <u>Foster</u>, 787 F.3d at 250 (explaining the different standards for proving causation during the prima facie case and to establish pretext).

Here, Brunson submitted a complaint to JHCP alleging that Pilarchik had "created a hostile and divisive work environment" on January 4, 2020. (Dec. 29, 2019 Emails at 2–

3, ECF No. 48-2; Brunson Dep. at 305:20–306:3). Ten days later, on January 14, 2020, Pilarchik notified Brunson that she was being placed on a PIP. (Brunson Dep. at 189:14–22). The parties present conflicting evidence about why Brunson was placed on the PIP and when the PIP was originated. Although Brunson relies on the short window between her complaint and her placement on the PIP for purposes of making out her prima facie case, JHCP contends that it decided to place Brunson on the PIP <u>before</u> it received notice of Brunson's complaints. Specifically, JHCP contends that it contemplated the PIP in September 2019 after Brunson had a weak performance review. (Mot. at 18–19; Sept. 10, 2019 Emails at 2). JHCP has not presented evidence, however, that it finalized the PIP or formally notified Brunson of the PIP before her January complaint.

As the standard to meet the causation prong in the prima facie case "requires little proof," and because Brunson has adduced evidence that she received notice of the PIP ten days after she lodged her complaint, the Court finds that the temporal proximity alone establishes the necessary causal link for this portion of the analysis. <u>See</u> <u>Romeo v. APS Healthcare Bethesda, Inc.</u>, 876 F.Supp.2d 577, 588 (D.Md. 2012) (finding that plaintiff made a prima facie showing of causation despite conflicting evidence where the plaintiff was terminated less than two months after she engaged in a protected activity); <u>see also</u> <u>Strothers</u>, 895 F.3d at 337 (holding that a nine-day period between a protected activity and an adverse event was "well within what [the Fouth Circuit] has found to be a causally significant window of time"). Although a jury may ultimately reject her claim, a reasonable juror could infer from the short, ten-day window that Brunson was placed on the PIP in retaliation for her complaints. Thus, Brunson has generated a jury question regarding

14

whether her placement on the PIP and termination were causally related to her engaging in the protected activity of lodging a complaint regarding her work environment. The Court declines to grant JHCP judgment as to Brunson's prima facie case of retaliation.

### b.    Legitimate Non-Discriminatory Reason

Under the McDonnell Douglas framework, once a plaintiff establishes a prima facie case of retaliation, as Brunson has here, the burden shifts to the employer "to show that its purportedly retaliatory action was in fact the result of a legitimate, non-retaliatory reason." Lewis v. Balt. City Bd. of Sch. Comm'rs, 187 F.Supp.3d 588, 595–96 (D.Md. 2016) (quoting Foster, 787 F.3d at 250). JHCP insists that it had legitimate, non-discriminatory reasons to place Brunson on the PIP and later terminate her employment, namely, that Brunson had consistent performance issues, trouble getting along with her coworkers, and refused to work with her supervisor after she was placed on the PIP. (Mot. at 19). At bottom, the Court finds that JHCP has adequately rebutted Brunson's prima facie claim for retaliation.

In support of its assertions, JHCP produces evidence that Brunson received a poor performance evaluation on July 29, 2019, indicating that she received an overall rating of 2.54 out of 5, which falls into the "needs improvement" category. (July 29, 2019 Performance Evaluation at 11). Pilarchik noted that Brunson needed to improve in several areas of her job, including administrative functions, clinical functions, "excellence," leadership, and respect. (See id. at 2–11). JHCP further produced an email showing that Pilarchik was concerned about Brunson's performance in September 2019. (Sept. 10, 2019, Emails at 2). On September 10, 2019, after Brunson received the poor performance review,

Pilarchik wrote an email to Beth Wilson, stating "I have serious concerns about Elaine and am quite convinced that she is not a good fit for our DPC practice. . . . The difficult thing is they are competency issues more so than behavioral at this point." (Id.).

JHCP also produces evidence of Brunson's difficulties getting along with her coworkers. Pilarchik testified that on July 15, 2019, Brunson and another employee, Zoe Ortiz, got into a conflict during a meeting. (Pilarchik Dep. at 156:22–60:3). During the meeting, Pilarchik questioned Brunson about a patient who had not been checked in properly and Brunson became "extremely defensive and was yelling." (Id. at 159:12–16). Brunson called her coworker Ortiz a liar, spoke over her, and did not let people finish talking. (Id. at 159:20–60:3). Ultimately, Ortiz felt that she was being disrespected by Brunson and left the meeting. (Id.). JHCP supplies other evidence regarding workplace conflicts and alleged subordination, including testimony that Brunson had outbursts at work, (id. at 92:16–93:5), was argumentative with management regarding her PIP, (id. at 160:13–61:11), and refused to attend meetings regarding her PIP, (id. at 51:20–52:2). Further, JHCP supplies evidence that Brunson made mistakes administering vaccines and performing electrocardiograms. (See Dy Dep. at 14:11–13, 50:3–51:1; id. at 165:13–20).

Without weighing in on the persuasiveness of JHCP's evidence, the Court is satisfied that JHCP has "proffer[ed] evidence of a legitimate, non-discriminatory reason for the adverse employment action." See Foster v. Univ. of Md. E. Shore, 908 F.Supp.2d 686, 708–09 (D.Md. 2012) [Foster I] (quoting Wright v. Sw. Airlines, 319 F.App'x 232, 233 (4th Cir. 2009)). Accordingly, the Court will shift to the next stage of analysis under burden-shifting test.

####      c.      Pretext

As JHCP has shown evidence of a legitimate, non-discriminatory reason for placing Brunson on the PIP and terminating her, the burden shifts back to Brunson "to prove by a preponderance of the evidence that the proffered reasons [for the adverse actions] were pretextual." Foster I, 908 F.Supp.2d at 709 (quoting Wright, 319 F.App'x at 233). Brunson argues that "there are disputed questions of material fact precluding summary judgment on the question of whether Brunson was placed on a PIP and terminated for legitimate reasons and whether the reasons proffered by JHCP for these adverse employment actions are pretextual." (Opp'n at 9). At bottom, the Court agrees that Brunson has created a jury issue as to pretext and will deny JHCP's Motion on Brunson's retaliation claim.

Again, "[w]here, as here, the employer produces a legitimate, non-retaliatory reason for the termination, the plaintiff bears the burden of offering evidence that the proffered reason is pretextual." Jaudon v. Elder Health, Inc., 125 F.Supp.2d 153, 169 (D.Md. 2000). The Supreme Court has held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000)).

Brunson's primary argument that JHCP's proffered non-retaliatory reason is pretextual is the close temporal proximity between Brunson filing her Title VII complaints and the issuance of the PIP, which as explained above, was a mere ten days. (See Opp'n at 10). If JHCP truly issued the PIP because of Brunson's poor performance on her July 2019 performance evaluation, Brunson questions why the PIP was not issued sooner. (Id. at 11).

Brunson's question is a good one, and JHCP does not offer a straightforward response. In its Reply, JHCP contends that Brunson's PIP was "automatically launched on October 15, 2019." (Reply at 14, ECF No. 63). JHCP avers that "the PIP came into existence on October 15, 2019, but it was not completed until January 14, 2020, and presented to Plaintiff the next day." (Id. at 15). JHCP justifies the five-month delay between the performance evaluation and the PIP by saying that Pilarchik was managing twelve practices and that Pilarchik was overburdened when another employee retired. (Id. at 15–16).

JHCP's explanations require the jury to make credibility determinations and weigh JHCP's evidence on the timeline. An objective juror could look at the evidence and conclude that JHCP's proffered justifications for its actions—Brunson's alleged performance deficiencies—were not its real reason for finalizing the PIP in the short days after Brunson made her complaints. Critically, if the PIP was "automatically" created in October but not drafted and issued until months later in the wake of Brunson's complaints, an objective fact finder could conclude that the PIP was motivated by retaliatory animus. Alternatively, a juror could conclude that Brunson had significant performance issues and Pilarchik, faced with a heavy workload, completed the PIP within a reasonable timeframe. The Court emphasizes that its role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Allstate Ins. Co. v. Rochkind, 381 F.Supp.3d 488, 507 (D.Md. 2019) (quoting Anderson, 477 U.S. at 249).

Further, the Court notes that Brunson has produced evidence disputing JHCP's claims regarding her performance issues. In her affidavit, she claims, among other things,

that she "never yelled or was disrespectful to co-workers or her supervisors," that she never gave a patient the wrong vaccine, and that she refused to meet with Pilarchik regarding the PIP because Pilarchik would "berate" her. (Brunson Decl. ¶¶ 18, 21, 24). In light of the parties' conflicting evidence on the PIP timeline and JHCP's proffered legitimate reason for the adverse actions, summary judgment is inappropriate on Brunson's retaliation claim.

For these reasons, the Court will deny JHCP's Motion regarding Brunson's retaliation claim (Count II).

### III.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendant JHCP's Motion for Summary Judgment (ECF No. 57). A separate Order follows.

Entered this 21st day of September, 2022.

_____/s/_____
George L. Russell, III
United States District Judge