IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ELAINE BRUNSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-20-3677 |
| JOHNS HOPKINS COMMUNITY PHYSICIANS, INC., | * | |
| | * | |
| Defendant. | | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Johns Hopkins Community Physicians, Inc.'s ("JHCP") Motion to Reconsider (ECF No. 69).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will deny the Motion.

## I.  BACKGROUND[2]

### A.  Brunson's Employment with JHCP

Plaintiff Elaine Brunson, a self-identified Black woman, began working for Defendant JHCP as a registered medical assistant on March 4, 2019. (Decl. Elaine Brunson ["Brunson Decl."] ¶¶ 1–3, ECF No. 62-1). Brunson's tenure with JHCP was not a harmonious one, and the parties disagree about many of the details. The parties do not

---

[1] The Court notes that JHCP initially filed a version of its Motion to Reconsider in error. (ECF No. 68). The Court will deny that Motion as moot and will review JHCP's corrected Motion. (ECF No. 69).

[2] In the interests of judicial economy, the Court restates the facts as outlined in its September 21, 2022 Memorandum Opinion. (ECF No. 64).

dispute, however, that on January 4, 2020, Brunson filed two complaints with the Equal Employment Opportunity Commission ("EEOC") alleging that she was subjected to race-based discrimination and harassment by JHCP. (Id. ¶ 12). Nor do they dispute that ten days later, JHCP placed Brunson on a Performance Improvement Plan ("PIP"), and on February 21, 2020, JHCP terminated her employment. (Id. ¶¶ 13, 31). Here, the commonalities in the parties' accounts end.

According to Brunson, she began to experience harassment based on her race soon after she started working for JHCP. (Compl. ¶ 5, ECF No. 1).[3] Brunson contends that her manager Angela Pilarchik, a white woman, often favored Brunson's other, non-Black coworkers over her. (Id. ¶¶ 10–11). On one occasion, Brunson contends that she approached a Nurse Practitioner named Carolyn Le to ask a question. Instead of offering assistance, Le rudely pointed at her and yelled for her to "Go, go, go!" (Brunson Decl. ¶ 11(e)). When Brunson complained about Le's behavior to Pilarchik, Pilarchik turned the incident back on Brunson and claimed that she was the one who yelled. (Id.). Brunson contends that this was typical behavior for Pilarchik and that she would often blame Brunson during conflicts. (Compl. ¶ 10; see Tr. Brunson Dep. ["Brunson Dep."] at 175:21–77:16, 212:12–20, ECF No. 52; Id. ¶ 11(c)). Brunson also alleges that Pilarchik failed to give her floater coverage during shifts, and as a result she would have to take her lunch breaks late. (Compl. ¶¶ 23–24; see also Brunson Dep. at 105:7–06:19–21, 239:17–40:1;

---

[3] The record in this case is dense and the parties have produced over 1,300 pages of documents to aid the Court in its decision. (See generally ECF Nos. 43–56).

Brunson Decl. ¶ 11(a)). Finally, Brunson contends that Pilarchik texted her incessantly when she was out sick, even after she asked Pilarchik to stop. (Compl. ¶ 32).

JHCP, on the other hand, tells a different story. JHCP contends that Brunson was a chronically poor performer and did not fit in well with her team. (See July 29, 2019, Performance Evaluation at 11, ECF No. 45-8). JHCP notes that Brunson received poor marks on her July 29, 2019 performance evaluation and was given an overall rating of 2.54 out of 5, or "needs improvement." (Id.). JHCP contends that Pilarchik had "serious concerns" about Brunson and that she was "quite convinced that [Brunson] [was] not a good fit" for their practice. (Sept. 10, 2019 Emails at 2, ECF No. 45-12). Pilarchik began to contemplate placing Brunson on a PIP in September 2019. (Id.).

According to JHCP, Brunson did not get along well with her coworkers. Pilarchik testified that during a July 15, 2019, staff meeting, Brunson called another employee, Zoe Ortiz, a liar. (Dep. Angela Pilarchik ["Pilarchik Dep."] at 156:22–60:3, ECF No. 52-1). The conflict escalated and Pilarchik testified that Brunson grew "extremely defensive and was yelling." (Id. at 159:12–16). Pilarchik testified that Brunson was speaking over others and would not let them finish talking. (Id. at 159:20–60:3). Pilarchik further testified that Brunson was difficult to manage after she was placed on the PIP and routinely refused to attend required meetings regarding her performance. (Id. at 51:20–52:2). Finally, Pilarchik and another employee, Dr. Dy, offered testimony that Brunson made mistakes while administering vaccines and performing electrocardiograms, which they contend contributed to JHCP's decision to terminate Brunson's employment in February 2020.

(Pilarchik Dep. at 165:13–20; Dep. Dr. Dy ["Dy Dep."] at 14:11–13, 50:3–51:1, ECF No. 52-2).

The Court will supply additional facts as necessary below.

**B.     Procedural History**

On December 18, 2020, Brunson filed this lawsuit against JHCP. (ECF No. 1). Brunson's two-count Complaint alleged: discrimination/hostile work environment under Title VII (Count I); and retaliation under Title VII (Count II). (Compl. ¶¶ 49–61). On December 9, 2021, following discovery, JHCP filed a Motion for Summary Judgment under seal (ECF No. 57). On January 7, 2022, Brunson filed her Opposition (ECF No. 62). JHCP filed its Reply on January 21, 2022 (ECF No. 63). On September 21, 2022, the Court issued a Memorandum Opinion granting the Motion in part and denying it in part. (ECF No. 64). Specifically, the Court granted the Motion as to Count I, discrimination/hostile work environment under Title VII. The Court denied the Motion in all other respects, leaving Brunson's retaliation claim (Count II) as the sole remaining basis for relief in the Complaint. (Sept. 21, 2022 Order at 1, ECF No. 65).

On October 5, 2022, JHCP filed the instant Motion to Reconsider (ECF No. 69). Brunson filed an Opposition on October 20, 2022. (ECF No. 73). JHCP filed a Reply on November 2, 2022. (ECF No. 74).

## II.     DISCUSSION

### A.     Standard of Review

#### 1.     Rules 54, 59, and 60

The Federal Rules of Civil Procedure include three Rules that permit a party to move for reconsideration. Rule 54(b) governs motions to reconsider interlocutory orders. See Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1469–70 (4th Cir. 1991). Rules 59(e) and 60(b) govern motions to reconsider final judgments. Id. Rule 59(e) controls when a party files a motion to alter or amend within twenty-eight days of the final judgment. Bolden v. McCabe, Weisberg & Conway, LLC, No. DKC-13-1265, 2014 WL 994066, at *1 n.1 (D.Md. Mar. 13, 2014). If a party files the motion later, Rule 60(b) controls. Id. Here, JHCP has moved for reconsideration of the Court's Memorandum Opinion denying in part JHCP's Motion for Summary Judgment. Accordingly, Rule 54(b) applies.

Under Rule 54(b), "any order or other decision, however designated, that adjudicated fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicated all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b). The Fourth Circuit has not articulated a standard of review for a Rule 54(b) motion. In re Marriott Int'l, Inc., No. PWG-19-2879, 2021 WL 1516028, at *2 (D.Md. Apr. 16, 2021). Although the Fourth Circuit has explained that "the restrictive standards of Rule 59(e) and Rule 60(b) motions for reconsideration are not binding for Rule 54(b) motions," courts often turn to those standards for guidance. Id. (citing cases).

A motion for reconsideration under Rule 59(e) "is discretionary" and therefore "need not be granted unless the district court finds that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." Id. (quoting Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 411 (4th Cir. 2010)). Rule 60(b), on the other hand, may offer relief if a party shows:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Id. at *3 (quoting Fed.R.Civ.P. 60(b)).

Under Rule 54(b), "the goal is to reach the correct judgment under law." Id. (quoting Lynn v. Monarch Recovery Mgmt., Inc., 953 F.Supp.2d 612, 618–19 (D.Md. 2013)). Still, "a motion for reconsideration under Rule 54(b) may not be used merely to reiterate arguments previously rejected by the Court." Id. (quoting Cezair v. JPMorgan Chase Bank, N.A., No. DKC-13-2928, 2014 WL 4955535, at *1 (D.Md. Sept. 30, 2014)). Indeed, "a motion to reconsider is not a license to reargue the merits." Id. (quoting Carrero v. Farrelly, 310 F.Supp.3d 581, 583–84 (D.Md. 2018)).

### 2. Title VII

Brunson's retaliation claim arises under Title VII. Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." Perkins v. Int'l Paper Co., 936 F.3d 196, 205 (4th Cir. 2019) (quoting 42 U.S.C. § 2000e-2). Courts have referred to § 2000e-2 as the "anti-discrimination" provision of Title VII. Id. Title VII further forbids discrimination based on an employee's "opposition to conduct made unlawful by Title VII or participation in any Title VII investigation, proceeding or hearing." Id. at 205–06 (citing 42 U.S.C. § 2000e-3). Section 2000e-3 is referred to as the "anti-retaliation" provision. Id. Brunson's retaliation claim falls under § 2000e-3. See id. at 206.

A plaintiff has two methods of proof to avoid summary judgment with regard to a Title VII discrimination or retaliation claim: the mixed-motive framework or the pretext framework using the McDonnell Douglas burden-shifting analysis. Perkins, 936 F.3d at 204 n.4. Brunson relies on the McDonnell Douglas factors. (See Sept. 21, 2022 Mem. Op. ["Mem. Op."] at 6, ECF No. 64); see also Diamond v. Colonial Life & Acc. Ins., 416 F.3d 310, 318 (4th Cir. 2005) (describing the "prima facie case" as "a mechanism peculiar to the pretext framework"). As Brunson has apparently opted for the pretext framework, which is within her discretion, the Court addresses the McDonnell Douglas factors in its analysis. See Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015) ("It is left to the plaintiff's discretion whether to proceed by direct and indirect evidence or by mean[s] of the McDonnell Douglas burden-shifting framework.").

7

B.     **Analysis**

JHCP argues that the Court erred for three reasons: (1) the Court "incorrectly assessed and stated the material facts by ignoring critical documents about Brunson's PIP"; (2) the Court "committed an error of law by failing to follow [Roberts v. Glenn Indus. Grp., Inc.,] 998 F.3d 111 (4th Cir. 2021)"; and (3) the Court "failed to analyze any aspects of Brunson's actual termination, which precludes the PIP from constituting an adverse employment action as a matter of law." (Def.'s Mot. Recons. ["Mot."] at 5–6, ECF No. 69). The Court rejects all three arguments and addresses them in turn.

First, JHCP contends that the Court "incorrectly" stated material facts. (Mot. at 6). Specifically, JHCP points to the following language in the Memorandum Opinion: "The parties present conflicting evidence about why Brunson was placed on the PIP and when the PIP was originated," (Mot. at 6 (Mem. Op. at 14)), and "JHCP has not presented evidence, however, that it finalized the PIP or formally notified Brunson of the PIP before her January complaint," (id.). The Court disagrees with JHCP's claim that it misstated the facts. For full context, the Court wrote the following in its Memorandum Opinion:

> Here, Brunson submitted a complaint to JHCP alleging that Pilarchik had "created a hostile and divisive work environment" on January 4, 2020. (Dec. 29, 2019 Emails at 2–3, ECF No. 48-2; Brunson Dep. at 305:20–306:3). Ten days later, on January 14, 2020, Pilarchik notified Brunson that she was being placed on a PIP. (Brunson Dep. at 189:14–22). The parties present conflicting evidence about why Brunson was placed on the PIP and when the PIP was originated. Although Brunson relies on the short window between her complaint and her placement on the PIP for purposes of making out her prima facie case, JHCP contends that it decided to place Brunson on the PIP before it received notice of Brunson's complaints. Specifically, JHCP contends that it contemplated the PIP in

8

> September 2019 after Brunson had a weak performance review. (Mot. at 18–19; Sept. 10, 2019 Emails at 2). JHCP has not presented evidence, however, that it finalized the PIP or formally notified Brunson of the PIP before her January complaint.
>
> As the standard to meet the causation prong in the prima facie case "requires little proof," and because Brunson has adduced evidence that she received notice of the PIP ten days after she lodged her complaint, the Court finds that the temporal proximity alone establishes the necessary causal link for this portion of the analysis. See Romeo v. APS Healthcare Bethesda, Inc., 876 F.Supp.2d 577, 588 (D.Md. 2012) (finding that plaintiff made a prima facie showing of causation despite conflicting evidence where the plaintiff was terminated less than two months after she engaged in a protected activity); see also Strothers, 895 F.3d at 337 (holding that a nine-day period between a protected activity and an adverse event was "well within what [the Fourth Circuit] has found to be a causally significant window of time"). Although a jury may ultimately reject her claim, a reasonable juror could infer from the short, ten-day window that Brunson was placed on the PIP in retaliation for her complaints. Thus, Brunson has generated a jury question regarding whether her placement on the PIP and termination were causally related to her engaging in the protected activity of lodging a complaint regarding her work environment. The Court declines to grant JHCP judgment as to Brunson's prima facie case of retaliation.

(Mem. Op. at 14–15).

Acknowledging this context, it appears that JHCP most meaningfully contests the Court's characterization that the parties had submitted conflicting evidence on the timeline surrounding Brunson's EEOC complaints, her PIP, and her termination. JHCP's argument strains credulity. Brunson presented evidence that JHCP did not formally place her on the PIP until ten days after she made her EEOC complaint. (See Mem. Op. at 14 (citing Brunson Dep. at 189:14–22)). JHCP responds that this characterization is untrue because

9

it had formed an intention to place her on the PIP as early as September 2019. (Mot. at 6–9). This is a textbook example of a dispute of material fact, and JHCP appears to fundamentally misunderstand the Court's well-established role at summary judgment. It is axiomatic that the Court may not weigh the evidence or make credibility determinations at summary judgment. Variety Stores Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651, 666 (4th Cir. 2018) (finding that district court had committed error at summary judgment because it should have "refrain[ed] from weigh[ing] the evidence" (quoting Lee v. Town of Seaboard, 863 F.3d 327 (4th Cir. 2017)). This is because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). JHCP asks this Court to give its evidence credence and reject Brunson's. Such an action would be entirely inappropriate at summary judgment and would result in this Court committing reversible error. Accordingly, the Court rejects JHCP's first argument as impermissible under the law as well as an attempt to relitigate the merits raised during summary judgment. See In re Marriott Int'l, Inc., 2021 WL 1516028, at *3 (D.Md. April 16, 2021); Ngatia v. Dep't Pub. Safety & Corr. Servs., No. WDQ-14-0899, 2015 WL 7012672, at *2 n.7 (D.Md. Nov. 12, 2015) ("When the motion raises no new arguments, but merely requests the district court to reconsider a legal issue or to 'change its mind,' relief is not authorized." (quoting Pritchard v. Wal-Mart Stores, Inc., 3 F.App'x 52, 53 (4th Cir. 2001))).

Next, JHCP argues that the Court failed to apply binding precedent in Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111 (4th Cir. 2021), when it issued its decision. But JHCP

10

never cited Roberts in its Motion for Summary Judgment. (See Def.'s Mot. Summ. J. ["Mot. Summ. J."] at 4, ECF No. 57-1 (not listing Roberts in its table of authorities or otherwise mentioning the case in the body of the motion)). Roberts was decided on May 21, 2021, seven months before JHCP filed its Motion for Summary Judgment. See Roberts, 998 F.3d 111; (see generally Mot. Summ. J.). Therefore, Roberts is not new law, and to the extent JHCP seeks to rely on it, JHCP should have raised it in its initial Motion. See Pac. Ins. Co. v. Am. Nat. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (stating that reconsideration "motions may not be used . . . to argue a case under a novel legal theory that the party had the ability to address in the first instance"). The Court declines to assess the merits of this newly raised argument which JHCP could have and should have raised at summary judgment.[4]

Finally, JHCP argues that the Court "never addressed whether Brunson's ultimate termination could be viewed as retaliatory." (Mot. at 13). JHCP contends that the Court focused its pretext analysis on the issuance of the PIP in January 2020 and failed to mention JHCP's justifications for firing Brunson in February 2020. (Id.). Again, JHCP merely rehashes its previous arguments in an attempt to seek a different outcome, which is not a

---

[4] Although the Court will not engage in a full analysis of JHCP's unraised argument, Roberts does not change the Court's decision. JHCP cites Roberts for the proposition that a retaliation claim cannot succeed if the employer lacked knowledge of the alleged protected activity before it made the alleged adverse action. See Roberts, 998 F.3d at 125–26; (Mot. at 9–13). JHCP argues, in another attempt to relitigate its previous points, that it made the decision to place Brunson on the PIP in October 2019, before she made her complaints in January 2020. (Mot. at 9–13). Again, this is a dispute of material fact that should be left squarely for the jury to decide, and the Court will not enter judgment on these grounds for the same reasons explained above.

proper basis for reconsideration. Nonetheless, JHCP's statement is flatly untrue. In the Court's Memorandum Opinion, the Court discussed JHCP's purported legitimate, non-discriminatory reasons "to place Brunson on the PIP and later terminate her employment" at length. (Mem. Op. at 15–16 (citing emails correspondence, deposition testimony, and performance evaluations). Indeed, the Court found that JHCP had presented sufficient evidence to establish that it had a legitimate basis for its employment decisions and turned to the next step, shifting the burden back on Brunson "to prove by a preponderance of the evidence that the proffered reasons [for the adverse actions] were pretextual." (Mem. Op. at 17). The Court found that Brunson did so—she submitted an affidavit in which she contested JHCP's claims regarding her performance, claiming, among other things, "that she 'never yelled or was disrespectful to co-workers or her supervisors,' that she never gave a patient the wrong vaccine, and that she refused to meet with Pilarchik regarding the PIP because Pilarchik would 'berate' her." (Mem. Op. at 18–19 (citing Brunson Decl. ¶¶ 18, 21, 24)). Again, the Court found that this created a genuine dispute of material fact and therefore declined to enter judgment on JHCP's behalf. Although JHCP may not like the Court's decision, that is not a valid basis for reconsideration. See Lynn, 953 F.Supp.2d at 620. Accordingly, the Court will deny JHCP's Motion.

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Defendant JHCP's Motion for Reconsideration (ECF No. 69). A separate Order follows.

Entered this 11th day of September, 2023.

/s/<br>_____

George L. Russell, III
United States District Judge